**STATE of Minnesota, Respondent,**

**v.**

**George S. HAMER, Appellant.**

**No. C2–83–1133.**

Court of Appeals of Minnesota.

Dec. 28, 1983.

Louise Miller O'Neil, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. Ramsey County Atty., St. Paul, for respondent.

Heard, considered and decided by PARKER, J., P.J., and WOZNIAK and LANSING, JJ.

## OPINION

PARKER, Judge.

This is a sentencing appeal. The defendant pleaded guilty to a charge of theft by swindle of a sum in excess of $2,500 in violation of Minn.Stat. § 609.52, subd. 2(4) and subd. 3(1) (1982). The presumptive sentence for defendant's offense (a severity level IV offense) by one with defendant's criminal history score of one, was a stayed sentence of 15 months. The sentencing court imposed an executed prison term of 27 months, thereby departing both dispositionally and durationally.

Defendant claims that his sentence should be reduced to the presumptive sentence because the Community Corrections Department recommended no departure from the Guidelines, the trial court improperly used employment and education as factors for departure and the trial court failed to make written reasons for departure.

Defendant was employed part-time as a bookkeeper at the St. Paul Church Home. While working at the Home, the defendant became acquainted with one of the residents, 80-year-old Ida Wuellner. Between September 1, 1980, and August 31, 1981, defendant obtained, for his own use, over $36,000 from Mrs. Wuellner. On March 28, 1983, defendant pleaded guilty to theft by swindle. On May 10, 1983, he was sentenced to an executed term of 27 months. Three weeks later, on May 31, the court filed a departure report with the Minnesota Sentencing Guidelines Commission.

Defendant asserts three grounds for reducing the sentence imposed by the trial court. First, defendant claims that the Community Corrections Department recommended no departure from the Guidelines in letters sent to defense counsel on

December 2, 1982, and May 6, 1983. The letters stated:

> The recommendation in the presentence investigation is for:
>
> *XXX* no departure from the Minnesota Sentencing Guidelines.
>
> _____ departure from the Minnesota Sentencing Guidelines.

At oral argument, respondent explained that this was a typographical error. Defense counsel conceded in oral argument that, before the hearings in both December and May, she saw the confidential Presentence Investigation Report in which the probation officer recommended a 30-month executed sentence. Furthermore, she had discussed the 30-month recommendation with defendant on both occasions. Therefore, neither defendant nor defense counsel was misled by the typographical errors.

■ Defendant's second claim is that the trial court improperly used employment and education as reasons for departure. At sentencing, it was the defendant who raised the subject of employment. In exercise of his right to allocution, defendant said he had a job "depending on the outcome of this case."

The trial court's reference to his employment was to point out to the defendant that he was in a position of trust, a factor aggravating the seriousness of the offense and proper to be considered in deviating from the Guidelines. Minnesota Sentencing Guidelines and Commentary II D.2.b(4)(d) (1983).

The trial court's references to education were directed toward the degree of defendant's culpability in breach of a fiduciary duty. This is also an aggravating factor to be considered as a reason for departure under II D.2.b(4)(d) of the Guidelines.

Defendant's third claim is that the trial court failed to make written reasons for departure. The trial court explicated its reasons for departure at sentencing in open court. The departure was based on: (1) the victim's age (80), implying greater vulnerability; (2) the defendant's position of responsibility when he committed the crime; (3) the defendant's intelligence and education; (4) the defendant's unamenability to probation based on his recent record; (5) the impossibility of defendant making restitution; (6) the burden on the taxpayers of the community as a result of defendant's crime; and (7) the defendant's failure to offer an explanation of any compelling need for the money or why he committed the crime.

Rather than relying on a mere typed transcript of the sentencing hearing, which may well have sufficed, the court drafted a formal report to the Sentencing Guidelines Commission setting forth the reasons in greater detail.

Defense counsel was apparently misled because she was not furnished a copy of that departure report. Neither the Sentencing Guidelines, the Rules of Criminal Procedure, nor the Minnesota Statutes appear explicitly to require that defense counsel be given a copy.

It appears that an informal procedure has developed in which defense counsel is not always furnished reasons for departure. However, Minn.Stat. § 244.10, subd. 2, states:

> whether or not a sentencing hearing is requested, pursuant to subd. 1, the district court *shall make written findings of fact as to the reasons for departure* from the Sentencing Guidelines in each case in which the court imposes or stays a sentence that deviates from the Sentencing Guidelines applicable to the case. (emphasis added)

■ In view of the above language, it would seem the intent of the legislature that "findings of fact" should be given to all counsel of record. We suggest that this problem can be avoided in the future by the simple and basically fair expedient of providing a copy of the departure report to defense counsel. In addition, when departing both durationally and dispositionally, it appears that the Guidelines intend that written reasons for each departure should be separately delineated.

The respondent contends that the departure was proper under the Sentencing Guidelines. The Minnesota Supreme Court has approved a dispositional departure based on defendant's demonstrated unamenability to probation. *State v. Brigger,* 316 N.W.2d 512 (Minn.1982). At the time of this offense, defendant was on probation for a gross misdemeanor conviction in 1979. In that offense, the defendant used his position as a bookkeeper at Butwinick Brothers, Inc., to steal $13,522 from his employer.

The Supreme Court has also approved upward durational departures, as justified where defendant's offense was a major economic crime. *State v. Brigger, supra* at 513. The Guidelines define such a crime as:

> an illegal act or series of illegal acts committed by other than physical means and by concealment or guide to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage.

The Guidelines also describe circumstances which constitute aggravating factors with respect to a major economic offense when two or more of the following are present:

> (a) the offense involved multiple victims or multiple incidents per victim;
>
> (b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense, or substantially greater than the minimum loss specified in the statutes;
>
> (c) the offense involved a high degree of sophistication or planning, or occurred over a lengthy period of time;
>
> (d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence or fiduciary relationships; or
>
> (e) the defendant had been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

Minnesota Sentencing Guidelines IID. 2.b(4) (1983).

Factors (a), (b), (c) and (d) are supported by the record: (a) there were multiple incidents against a single victim—at least seven substantial withdrawals from her accounts; (b) far greater monetary loss than the statutory minimum was caused; $36,793.99 as against $2,500. Moreover, the victim's assets were, at the end, totally and completely divested; (c) planning and financial expertise were needed and the incidents took place over a lengthy period of time—at least a year; and (d) the defendant exploited his position of trust as a bookkeeper for the nursing home, facilitating the commission of the offense.

It is apparent from the record that the trial court's commendable diligence in visiting the victim in the nursing home led to a thorough understanding of the facts of the offense and was of assistance in fashioning an appropriate sentence. When the trial court judge visited the victim at the Home, he perceived that she was unable to testify. He was also able to appreciate the vulnerability of the elderly woman, particularly to a person holding a position of trust in the protected environment of a nursing home.

The sentence imposed was fair under all of the circumstances. The defendant was not deprived of any right in connection with the sentence, nor was his counsel deprived of an opportunity to request a sentencing hearing. Defense counsel had an adequate opportunity to read the confidential Presentence Investigation Report which recommended a 30-month executed sentence, and had adequate opportunity to discuss the report with defendant. The grounds for both departures are recognized by the Guidelines and case law and are supported by the sentencing record and the departure report.

We affirm.