**STATE of Minnesota, Respondent,**

v.

**Douglas H. FINBRAATEN, Appellant.**

**No. C0–84–1187.**

Court of Appeals of Minnesota.

Feb. 26, 1985.

Review Denied April 18, 1985.

Hubert H. Humphrey, III, Atty. Gen., of Minn., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Jonathan G. Steinberg, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This is an appeal by a criminal defendant from a three year prison term imposed by the court and executed for a conviction of theft by swindle in excess of $2,500 in violation of Minn.Stat. § 609.52, subds.

2(4), 3(1) (1982). Appellant Douglas Finbraaten contends the triple durational departure and his dispositional departure was not justified by substantial and compelling circumstances and the evidence was insufficient to convict. We affirm.

## FACTS

In January 1983 Lillian Bronson, age 97, lived in her Minneapolis home with a live-in aide, Joanne Chase. Chase's daughter, Teri, was the girlfriend of appellant, Douglas Finbraaten, who was age 34. Appellant had moved in with Teri three years earlier when she was 16 after separating from his wife in Montana. In the summer of 1983, Bronson hired appellant for repair work around her home. Bronson was mentally alert at the time. She normally paid appellant and reimbursed his expenses with a signed check. Bronson never typed the checks.

On July 25, 1983, appellant deposited a check in his bank account signed by Lillian Bronson to the order of Douglas H. Finbraaten in the amount of $100,000. The date, payee and amounts were all typed.

On July 29, 1983, appellant cashed a $300 check drawn on his account at his bank, payable to cash. On August 1, 1983, he withdrew two $40,000 cashier's checks and $10,000 in cash, flew to Los Angeles, but had difficulty cashing the checks. He returned to Minneapolis on August 5th and wired $80,000 to a California bank.

Appellant then called Teri Chase and asked her to fly to Las Vegas to attempt a reconciliation as they had recently separated. They traveled to Los Angeles (where appellant bought a used Cadillac for $8,000 cash), San Francisco, Lake Tahoe and Reno. Teri Chase then returned to Minneapolis.

At trial Lillian Bronson testified by video-tape that she signed a blank check for appellant to enable him to purchase supplies. She said she never intended a gift or loan, never authorized the $100,000, and "nearly keeled over" when she discovered what happened.

Appellant testified the check was given by Lillian Bronson to help start his own construction business. He claimed Bronson felt sorry for him and wanted to help. According to appellant, when Teri Chase told him she wanted to break up on July 26, 1983 he fell apart. He violated Lillian Bronson's trust by going on a drinking binge and spending spree over the next few months. More than $80,000 was unaccounted for, and appellant claimed all of it was spent or lost.

The jury convicted appellant of theft by swindle over $2,500. The presumptive sentence was one year and one day stayed, and the trial court sentenced appellant to an executed prison sentence of 36 months.

## ISSUES

1. Does the record support the trial court's dispositional and durational departure?

2. Was the evidence sufficient to convict appellant?

## ANALYSIS

### I.

■ Appellant's 36 month sentence, representing a dispositional departure and triple durational departure from the presumptively stayed sentence of one year and one day, was clearly justified by substantial and compelling reasons. The trial court stated appellant took advantage of a 97 year old woman who was particularly vulnerable due to her age. Minnesota Sentencing Guidelines II.D.2.b.(1); *State v. Johnson*, 359 N.W.2d 698 (Minn.Ct.App. 1984).

This was a major economic offense, which is defined by the guidelines as:

an illegal act or series of illegal acts committed by other than physical means and by concealment or guile to obtain money or property, to avoid payment or loss of money for property, or to obtain business or professional advantage.

Minnesota Sentencing Guidelines II.D. 2.b.(4).

The presence of two or more of the following circumstances are aggravating factors with respect to the offense:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense of substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

*Id.*

Factors (b), (c) and (d) are supported by the record: (b) the loss was substantially greater than the $2,500 minimum loss in Minn.Stat. § 609.52; (c) considerable planning was used to obtain the blank check and obtain the proceeds; and (d) appellant exploited his position as a handyman to commit the offense by taking a blank check meant to pay for supplies and filling it in improperly.

The State's evidence showed appellant typed the check using a typewriter borrowed from Lillian Bronson. As the State argued, he made a test run to determine if the $100,000 had cleared by attempting to cash a $300 check from his own account. He then withdrew $90,000 by two $40,000 cashier's checks and $10,000 in cash, went to California, flew back to Minneapolis, wired money to a California bank, and withdrew it there. Lillian Bronson trusted appellant, and appellant admitted he violated her trust.

The loss to the 97 year old victim represented a substantial amount of her life savings. The sentence of 36 months is not disproportional to the offense. *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981). The triple departure was justified by the following cases. *State v. Brigger*, 316 N.W.2d 512 (Minn.1982); *State v. Wittig*, ·343 N.W.2d 711 (Minn.Ct.App.1984); *State v. Hamer*, 341 N.W.2d 578 (Minn.Ct. App.1983).

We note while appellant did not specifically challenge the dispositional departure in his brief, the dispositional departure was justified by the egregiousness of appellant's conduct. *State v. Gartland*, 330 N.W.2d 881, 883 (Minn.1983).

## II.

■ Appellant's contention that the evidence was insufficient to show he obtained the $100,000 "[b]y swindling, whether by artifice, trick, device or any other means," Minn.Stat. § 609.52, subd. 2(4), is without merit. The jury could reasonably have concluded he was guilty based on the testimony of the State's witnesses, especially the testimony of Lillian Bronson. The jury was entitled to disbelieve appellant's story. *See State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

## DECISION

Substantial and compelling reasons justified the triple departure of appellant's sentence for swindling $100,000 from a 97 year old victim. The evidence was also sufficient to sustain appellant's conviction for theft by swindle over $2,500.

Affirmed.