**STATE of Minnesota, Respondent,**

v.

**Randy Allen FETT, Appellant.**

**No. CX–87–1342.**

Court of Appeals of Minnesota.

Nov. 10, 1987.

Review Denied Dec. 22, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Nancy Evans, Mower Co. Atty., Austin, for respondent.

C. Paul Jones, State Public Defender, Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY, and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

This appeal is from a sentence imposed for felony theft, Minn.Stat. § 609.52, subds. 2(3) and 3(1) (1986). The court, departing both dispositionally and durationally, imposed an executed sentence of 20 months. We affirm.

## FACTS

Appellant Randy Fett pleaded guilty to one count of felony theft for obtaining over $2,500 from an 80–year–old woman by

false representations. Fett entered a *Goulette* plea, maintaining his innocence. *State v. Goulette*, 258 N.W.2d 758 (Minn. 1977). The trial court gave notice of its intent to depart, after receiving the presentence investigation. Following testimony and argument at the sentence hearing, the court sentenced Fett to a 20–month executed sentence and required restitution of $2,750.

Fett admitted he received $2,760 from the victim, Alice Klingsheim, in six checks dated from April to June 1985, made payable to and endorsed by Fett. The state amended its complaint to reduce the amount charged on the theft count from $9,100 to $2,760. Fett obtained the money by telling the victim his daughter had died and his wife had suffered a nervous breakdown.

It was difficult to determine the victim's total loss because of the confusion evident in her financial affairs. The preparer of the presentence investigation testified the total loss could have been $9,100, and the victim stated "all her savings [were] totally wiped out." The investigating officer testified Klingsheim had one slip of paper indicating between $9,100 and $10,000 had been "loaned" out and another slip showing around $60,000. The officer estimated the total loss at $69,000–$70,000, apparently adding the two figures together, and stated this amount was confirmed by the records of Klingsheim's withdrawals.

The victim stated some of the money she "loaned" out was for a Danny Kvasnicka, a neighbor, who asked her for money over the phone in a voice she recognized. Sometimes she dropped this money off in an arranged location; at other times Fett picked it up for Kvasnicka. Fett was charged with aiding and abetting felony theft based on these occurrences, although it is unclear from the file whether "Danny Kvasnicka" actually existed. The state also charged an attempted theft for a requested $3,900 "loan" which was thwarted by police, leading to Fett's arrest.

The court cited the following reasons for its durational and dispositional departure:

1. The victim was particularly vulnerable due to her age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the defendant.
2. The offense was a major economic offense identified as an illegal act or series of illegal acts committed other than by physical means or by concealment or guile to obtain money or property.
3. The circumstances surrounding the event were so outrageous as to offend any sense of justice.

## ISSUE

Did the trial court abuse its discretion in departing dispositionally and durationally from the presumptive sentence?

## ANALYSIS

■ Fett concedes the victim, an 80–year–old woman living alone, was vulnerable due to her age. *See State v. Finbraaten*, 363 N.W.2d 473, 474 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. April 18, 1985) (97–year–old victim of theft by swindle was particularly vulnerable due to age). The vulnerability of the victim is sufficient to support the limited durational departure of approximately one and one-half times the presumptive sentence. Therefore, we need not decide whether the offense was a "major economic offense" as defined in Minnesota Sentencing Guidelines and Commentary II.D.103.2(b)(4). Nor do we address whether the offense was outrageous as found by the trial court.

■ Fett states in his brief that he does not challenge the dispositional departure. Even if such a challenge were made, however, we believe the dispositional departure is justified by Fett's lack of remorse and his unamenability to probation. *See State v. McGee*, 347 N.W.2d 802, 806 n. 1 (Minn. 1984) (lack of remorse is relevant to determination of amenability to probation); *State v. Wall*, 343 N.W.2d 22 (Minn.1984) (perpetrator-related factors such as unamenability to probation bear on dispositional departure); *State v. Back*, 341 N.W.2d

273 (Minn.1983) (remorse bears on dispositional departure).

The presentence investigation reported that Fett showed no remorse, projected blame for the offense, and maintained the victim's payments were merely loans which should concern only himself and the victim. In offering his *Goulette* plea, Fett did not deny the facts alleged in the complaint, but claimed they constituted no offense, merely a series of loans. He demonstrated no appreciation for the impact of his actions on the victim. Although we acknowledge Fett's right to plead guilty while maintaining his innocence under *Goulette,* his inability to recognize the effect of his actions negates amenability to treatment.

Fett's lengthy misdemeanor record, including resisting arrest and obstructing an investigation, would, along with his expressed lack of remorse, justify a finding of unamenability to probation and thus the dispositional departure.

### DECISION

The trial court did not abuse its discretion in imposing durational and dispositional departures.

Affirmed.