STATE of Minnesota, Respondent,

v.

Jimmie D. JACKSON, Appellant.

No. A06–1330.

Court of Appeals of Minnesota.

Nov. 13, 2007.

Lori Swanson, Attorney General, St. Paul, MN, Michael O. Freeman, Hennepin County Attorney, J. Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by DIETZEN, Presiding Judge; RANDALL, Judge; and HALBROOKS, Judge.

## OPINION

DIETZEN, Judge.

Appellant challenges his conviction of first-degree criminal sexual conduct, arguing that the district court erred in denying his motion to suppress DNA evidence and that the evidence is not sufficient to support the conviction. Because the district court properly applied the law and that the evidence is sufficient to support the conviction, we affirm.

## FACTS

On an evening in August 2000, seventeen-year-old A.C. celebrated her birthday

with her cousin. Around 2:00 a.m., A.C. decided to walk home. As she was walking through Willard Park, she heard a man yell at her, "Stop, bitch." When A.C. turned around, she saw a man with a gun running toward her. The man tried to rob her, but changed his mind and forced A.C. at gunpoint to a secluded, poorly-lit area of the park. He told her to get on her knees and perform oral sex on him. When A.C. refused the man's various demands, he jammed the gun against her head, threatened to kill her, and forcibly raped her.

A.C. ran home, told her mother what had happened, and was taken to the hospital. At the hospital, a sexual-assault nurse examined A.C. and observed "three sites of injury in [A.C.'s] vaginal area" which is "not consistent with consensual sex," but rather is "consistent with forced penetration." The nurse sent the vaginal swabs to the Minnesota Bureau of Criminal Apprehension (BCA) for DNA analysis. The unknown DNA profile obtained from A.C.'s vaginal swab was entered into the BCA database, but no matches were found.

In 2003, appellant Jimmie D. Jackson was convicted of aggravated robbery and was required by Minn.Stat. § 609.117 (2002) to provide a biological specimen, that is, a blood sample, for DNA analysis. Appellant's DNA profile information was then entered into the BCA database. In December 2004, after performing a periodic search of the database, the BCA matched appellant's DNA to the DNA in the forensic sample from the assault on A.C. In January 2005, a complaint was filed in Hennepin County charging appellant with first-degree criminal sexual conduct. In March 2005, the police obtained another DNA sample from appellant's saliva, which confirmed the initial database match.

Before trial, appellant moved to suppress the DNA evidence on the ground that Minn.Stat. § 609.117 was unconstitutional and, therefore, the testing and "searches" violated his constitutional protections against unreasonable searches and seizures. Following a hearing, the district court denied the motion and the matter proceeded to trial.

At trial, A.C. described her attacker as a six-foot-one black male in his late 20s, who weighed 210 pounds and had short hair, a Chicago accent, and jagged or broken yellow teeth. The state's expert, a BCA forensic scientist who performed the DNA analysis in this case, testified that "the semen profile obtained from the vaginal swab does match Jimmie Dale Jackson's known sample at all areas" and that statistically "[the BCA] would not expect to see [Mr. Jackson's] DNA profile more than once among unrelated individuals in the world population."

Appellant denied that he raped A.C. but admitted that in August 2000 he met A.C. at Cato's bar, invited her to a party at his house, and that she and several others attended a party at appellant's house. While he did not remember whether he had sex with A.C., he stated "it's possible." The defense's expert, a professor of evolutionary biology, testified that "random match probability"—the method used by the BCA to compare DNA profiles—is not generally accepted in the scientific community.

The jury convicted appellant of first-degree criminal sexual conduct, and he received an executed sentence of 144 months. This appeal follows.

## ISSUES

I. Does Minn.Stat. § 609.117 (2002), and the taking of a biological specimen, that is, a blood sample, the BCA database search, and the confirmatory saliva sample violate ap-

pellant's constitutional protection against unreasonable searches and seizures?

II. Was the evidence sufficient to support appellant's conviction of first-degree criminal sexual conduct?

## ANALYSIS

### I.

■ Appellant argues that the requirement under Minn.Stat. § 609.117 (2002) that he provide a DNA sample to law enforcement is unconstitutional under the Fourth Amendment to the United States Constitution and article I, section 10, of the Minnesota Constitution. Appellant also asserts that it is unconstitutional for the government to retain his DNA profile and "re-search" it through the BCA database. Thus, appellant contends that the district court erred in denying his motion to suppress the DNA evidence. We review the constitutionality of a statute and a warrantless search de novo. *State v. Wolf,* 605 N.W.2d 381, 386 (Minn.2000) (statute); *State v. Rochefort,* 631 N.W.2d 802, 805 (Minn.2001) (warrantless search).

Minn.Stat. § 609.117 requires, among other things, that convicted felons provide a biological specimen "for the purpose of DNA analysis before completion of the person's term of imprisonment." Minn. Stat. § 609.117, subd. 2. Appellant, who was convicted of aggravated robbery in 2003, was required to provide a biological specimen, that is, a blood sample, pursuant to the statute. Appellant's DNA sample was analyzed, stored in the BCA database, and searched on a periodic basis.

### A. Federal Constitution

■ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." It is undisputed that requiring a defendant to provide a blood sample for DNA analysis constitutes a Fourth Amendment search. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 616–18, 109 S.Ct. 1402, 1412–14, 103 L.Ed.2d 639 (1989) (concluding that the taking of a blood, urine or breath sample constitutes a search under the Fourth Amendment). The remaining question is whether the suspicionless search of a defendant to obtain a biological specimen, that is, a blood sample, is reasonable.

There is a plethora of federal cases that have examined a defendant's Fourth Amendment rights under the DNA Analysis Backlog Elimination Act of 2000 (DNA Act), which provides that individuals who have been convicted of a "qualifying Federal offense" and who are incarcerated or on parole, probation or supervised release must provide federal law enforcement authorities with "a tissue, fluid, or other bodily sample" for purposes of extracting their DNA. 42 U.S.C. § 14135a(a)(1)-(2), (c)(1) (2006). Virtually all of the federal cases have upheld the constitutionality of the DNA Act under the Fourth Amendment under either a "special needs" rule or an examination of the totality of the circumstances. *United States v. Kincade,* 379 F.3d 813 (9th Cir.2004); *United States v. Sczubelek,* 402 F.3d 175 (3d Cir.2005); *United States v. Kraklio,* 451 F.3d 922 (8th Cir.2006).

Both approaches were originally applied in the context of warrantless searches. In *Griffin v. Wisconsin,* the United States Supreme Court held that a warrantless search conducted by a probation officer pursuant to a state regulation that required probation searches to be based on reasonable grounds withstood Fourth Amendment scrutiny. 483 U.S. 868, 107

S.Ct. 3164, 97 L.Ed.2d 709 (1987). The Court adopted a "special needs" rule, which states that certain government searches "present[ ] 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873–74, 107 S.Ct. at 3168. It reasoned that probation officers have a "special need" to supervise probationers that justifies a departure from the normal warrant and probable cause requirements. *Id.* at 875, 107 S.Ct. at 3169.

In *United States v. Knights*, the Court considered whether a warrantless search of a probationer's apartment supported by reasonable suspicion and authorized by a condition of his probation was reasonable "under our general Fourth Amendment approach of examining the totality of the circumstances." 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001) (quotation omitted). The Court stated:

> The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. Knights' status as a probationer subject to a search condition informs both sides of that balance. Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. Probation is one point ... on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled. Just as other punishments for criminal convictions curtail an offender's

> freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.

*Id.* at 118–19, 122 S.Ct. at 591 (quotations omitted).

Then in *United States v. Sczubelek*, the Third Circuit Court of Appeals considered whether the DNA Act, which required Sczubelek, a convicted felon on supervised release, to submit a biological specimen, that is, a blood sample, violated his rights under the Fourth Amendment. 402 F.3d 175, 181–82 (3d Cir.2005). Applying the totality of the circumstances analysis in *Knights*, the *Sczubelek* court found the DNA Act constitutional. *Id.* at 184. It reasoned that the government's compelling interests in collecting identifying information of offenders for accurate criminal investigations outweighed the insignificant intrusion to the defendant and the defendant's reduced expectation of privacy. *Id.* at 187. It reasoned that the intrusion on the individual is insignificant, the individual's expectation of privacy is reduced, and the government's interest is compelling. *Sczubelek,* 402 F.3d at 186–87. In *United States v. Kraklio*, the Eighth Circuit Court of Appeals adopted the reasoning in *Sczubelek.* 451 F.3d at 924.

A minority of federal circuit courts—the Second and Seventh Circuits—apply the "special needs" rule. *See United States v. Amerson,* 483 F.3d 73, 79 n. 6 (2d Cir. 2007); *United States v. Hook,* 471 F.3d 766, 773 (7th Cir.2006). These courts generally uphold the DNA indexing statutes as constitutional under the special needs rule because "the state's purpose in conducting DNA indexing is distinct from the ordinary 'crime detection' activities associated with normal law-enforcement concerns," and thus the suspicionless search survives Fourth Amendment scrutiny.

*Nicholas v. Goord,* 430 F.3d 652, 669 (2d Cir.2005).

Notably, *Griffin* and *Knights* involved warrantless searches, not suspicionless searches as authorized under Minn.Stat. § 609.117. Most recently, in *Samson v. California,* the United States Supreme Court resolved the two different approaches to suspicionless searches in favor of examining the totality of the circumstances in a suspicionless search of a parolee conducted pursuant to a California law stating that, as a condition for release, every prisoner eligible for state parole must agree to be subject to a search or seizure by a parole officer with or without a search warrant and with or without cause. —— U.S. ——, ——, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250 (2006). The *Samson* Court concluded that:

> [U]nder our general Fourth Amendment approach we examine the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment. Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

*Id.* at 2197 (quotations omitted). In evaluating the degree of intrusion, the Court reaffirmed its holding in *Knights* that "by virtue of their status alone, probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* (quotations omitted). The rights of those incarcerated are even more limited. *Hudson v. Palmer,* 468 U.S. 517, 524, 530, 104 S.Ct. 3194, 3199, 3202, 82 L.Ed.2d 393 (1984) (holding that prisoners have no reasonable expectation of privacy in jail cell and that "imprisonment carries with it the circumscription or loss of many significant rights").

We conclude that the holding in *Samson* requires that we examine the totality of the circumstances to determine whether the biological specimen requirement in Minn.Stat. § 609.117 is unreasonable under the Fourth Amendment. Assessing the degree of intrusion on an individual's privacy against the importance of the legitimate governmental interests, we conclude that the biological specimen requirement under Minn.Stat. § 609.117 is constitutional under the Fourth Amendment. Specifically, the degree of intrusion upon a convicted felon's privacy under the statute is minimal and the degree to which it is needed to promote legitimate governmental interests is significant. *See Kincade,* 379 F.3d at 837 ("[o]nce a person is convicted [of a felony] ... his identity has become a matter of state interest and he has lost any legitimate expectation of privacy in the identifying information derived from blood sampling") (quotation omitted); *Kruger v. Erickson,* 875 F.Supp. 583, 588 (D.Minn.1995) (concluding that Minnesota's DNA indexing statute "serves the legitimate governmental interest of assisting investigation and prosecution of sex crimes" and "[t]he need to search ... outweighs the minimal intrusion which occur[s]"), *aff'd,* 77 F.3d 1071 (8th Cir.1996); *accord Samson,* 126 S.Ct. at 2197; *Sczubelek,* 402 F.3d at 185; *Kraklio,* 451 F.3d at 924.

Appellant next argues that even if Minn. Stat. § 609.117 is constitutional, the BCA's database search, which found the "match" between appellant's DNA profile and the unknown DNA on A.C.'s vaginal swab, should also be suppressed as a suspicionless search. Appellant contends that comparing appellant's DNA profile against an unknown DNA profile in the BCA database amounts to a separate search for Fourth Amendment purposes. We disagree.

■ Clearly, a search occurs when a blood sample is taken, and a "further invasion" occurs when that sample is submitted to "chemical analysis" to create a DNA profile. *Skinner,* 489 U.S. at 616, 109 S.Ct. at 1413. But accessing and searching records stored in the BCA database does not constitute a search under the Fourth Amendment. *Johnson v. Quander,* 440 F.3d 489, 498 (D.C.Cir.2006) ("[T]he process of matching one piece of personal information against government records does not implicate the Fourth Amendment."). Here, the "search" was complete when appellant's original blood sample was obtained under Minn.Stat. § 609.117 and DNA testing was performed on it.

Finally, appellant argues that because the initial DNA sample obtained pursuant to Minn.Stat. § 609.117 was an unconstitutional search and seizure, the database search and subsequent saliva DNA sample must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Because the initial search, that is, the blood sample obtained pursuant to Minn.Stat. § 609.117, was constitutional, appellant's fruit of the poisonous tree argument fails. We also observe that the saliva sample was taken pursuant to a valid court order applying Minnesota Rule of Criminal Procedure 9.02, subd. 2(f), which, subject to constitutional limitations, permits the taking of saliva samples for pretrial discovery purposes.

### B. Minnesota Constitution

■ Appellant contends that Minn. Stat. § 609.117 violates article I, section 10, of the Minnesota Constitution. Our supreme court has stated:

It is axiomatic that a state supreme court may interpret its own state constitution to offer greater protection of indi-vidual rights than does the federal constitution. Indeed, as the highest court of this state, we are independently responsible for safeguarding the rights of [our] citizens. State courts are, and should be, the first line of defense for individual liberties within the federalist system.

*State v. Carter,* 596 N.W.2d 654, 657 (Minn.1999) (quotations omitted). But a decision to interpret the Minnesota Constitution differently from the federal constitution should not be made "cavalierly." *Id.*

Because the language of article I, section 10 of the Minnesota Constitution is identical to the Fourth Amendment we "invariably turn in the first instance" to decisions of the United States Supreme Court for guidance, subject to certain exceptions established by our supreme court. *In re Welfare of E.D.J.,* 502 N.W.2d 779, 781 (Minn.1993) (applying objective test, on the basis of whether a reasonable person would determine that he or she was free to go, to determine whether a seizure had occurred); *Ascher v. Comm'r of Pub. Safety,* 519 N.W.2d 183 (Minn.1994) (temporary roadblocks to investigate driving under the influence struck down on the basis that police need reasonable, articulable suspicion before making an investigative stop). In *E.D.J.* and *Ascher* our supreme court concluded that earlier decisions by the United States Supreme Court were a sharp departure from Minnesota law.

Our supreme court has not addressed the issue of whether Minn.Stat. § 609.117 is constitutional. *Johnson v. State,* 673 N.W.2d 144, 149 n. 7 (Minn.2004) (expressly stating that the court is not reaching the question of whether Minn.Stat. § 609.3461, renumbered as Minn.Stat. § 609.117, is constitutional). The totality of the circumstances test adopted by the *Samson* Court

examines the reasonableness of a search by "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson*, 126 S.Ct. at 2196. Our supreme court has indicated that the totality of the circumstances test does not represent a sharp departure from Minnesota search and seizure jurisprudence. *State v. Anderson*, 733 N.W.2d 128, 140 (Minn. 2007). Therefore, consistent with our analysis under the Fourth Amendment of the United States Constitution, we conclude that Minn.Stat. § 609.117 is constitutional under article I, section 10 the Minnesota Constitution.

## II.

■ Appellant argues that the evidence is insufficient to support his conviction of first-degree criminal sexual conduct. When considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jurors to reach a guilty verdict.[1] *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that the jury believed the state's evidence and did not believe evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). In evaluating the reasonableness of the jury's decision to convict, the court defers to the jury regarding the credibility of witnesses and the weight to be given to each witness's testimony. *State v. Bliss*,

457 N.W.2d 385, 390 (Minn.1990). The "assumption that the jury believed the state's witnesses is particularly appropriate when resolution of the case depends on conflicting testimony." *State v. Pippitt*, 645 N.W.2d 87, 92 (Minn.2002).

■ First, appellant contends A.C.'s testimony was inconsistent and thus insufficient to support his conviction. Generally, minor inconsistencies in the state's case—or in a witness's testimony—are not sufficient to overturn a conviction. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). Inconsistent testimony is more a sign of human fallibility in perception than testimonial falsity, especially in cases involving a traumatic or stressful event. *State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn.1983). Inconsistencies in insignificant details are immaterial when a victim's testimony is consistent on the whole. *State v. Mosby*, 450 N.W.2d 629, 634 (Minn.App.1990), *review denied* (Minn. Mar. 16, 1990).

Appellant highlights several inconsistencies in A.C.'s testimony. Shortly after the attack, A.C. worked with a sketch artist to create a drawing of her attacker. At that time, A.C. rated the accuracy of the sketch an eight on a scale of ten, but at trial A.C. testified that the sketch did not look like her attacker. Also, A.C. described her attacker as being six-foot-one and weighing 210 pounds, but appellant is six-foot-six and weighs 284 pounds. Finally, A.C. testified that her cousin picked her up at 10:00 p.m. on the evening of the attack, but her cousin testified she picked up A.C. at midnight.

---

1. Appellant contends that his conviction should be reversed under an "interests of justice standard" because there are "grave doubts as to appellant's guilt." But in this case, where appellant is challenging the state's witnesses' testimony and credibility and the record does not create grave doubt as to appellant's guilt, the traditional sufficiency-of-the-evidence analysis is used. *State v. Struss*, 404 N.W.2d 811 (Minn.App.1987), *review denied* (Minn. June 9, 1987); *State v. Robinson*, 536 N.W.2d 1, 2 (Minn.1995).

Here, the inconsistencies in A.C.'s testimony are relatively minor, especially in light of the traumatic nature of the rape and her other consistent testimony. A.C.'s reports to the sexual-assault nurse and the investigating officer at the time of the assault corresponded to A.C.'s testimony at trial. The inconsistencies in A.C.'s testimony were presented to the jury, and the jury found her to be credible despite the discrepancies. *See Bliss*, 457 N.W.2d at 390 (jury determines credibility of witnesses).

 Second, appellant argues that A.C.'s failure to identify appellant at trial as her attacker impacts the sufficiency of the evidence. "A conviction may stand, despite . . . [eyewitness'] failure to identify the defendant, if circumstantial evidence offered is strong enough to exclude any reasonable hypothesis of innocence." *State v. Guy*, 409 N.W.2d 248, 251 (Minn. App.1987), *review denied* (Minn. Sept. 18, 1987) (citing *State v. Bergland*, 290 Minn. 249, 253–54, 187 N.W.2d 622, 625 (1971)).

While A.C. did not positively identify appellant as her attacker, the jury has the right to consider the strength of the circumstantial evidence including the DNA results, A.C.'s mostly accurate description of appellant, and the location of appellant's home near Willard Park. The jury presumably found the circumstantial evidence sufficient to convict appellant. *See Webb*, 440 N.W.2d at 430 (jury is in best position to evaluate circumstantial evidence, and its verdict is entitled to due deference).

 Finally, appellant contends that his exculpatory testimony supports his insufficiency-of-the-evidence claim. But even where a defendant's testimony is ex-culpatory, the jury is not required to credit his testimony. *State v. Berry*, 309 N.W.2d 777, 784 (Minn.1981); *State v. Finbraaten*, 363 N.W.2d 473, 475 (Minn.App.1985) (a jury is free to disbelieve a defendant's story), *review denied* (Minn. Apr. 18, 1985).

Appellant denied sexually assaulting A.C. in the park with a weapon and contends that his DNA profile does not establish that he forcibly raped A.C. in the park. But the jury was free to credit A.C.'s testimony that she was raped, that she did not have consensual sex with appellant, and that the DNA provided sufficient evidence that appellant raped her.

On this record, viewed in the light most favorable to the conviction, the evidence is sufficient to uphold appellant's conviction of first-degree criminal sexual conduct.

## DECISION

Because Minn.Stat. § 609.117 (2002) is constitutional under both the United States and Minnesota Constitutions, the district court did not err in denying appellant's motion to suppress the DNA evidence. Further, the evidence is sufficient to sustain appellant's conviction where the alleged discrepancies were presented to the jury and the jury credited the state's witnesses.

**Affirmed.**