*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2055**

State of Minnesota,
Respondent,

vs.

Gregory Levon Spraggins, Jr.,
Appellant

**Filed September 8, 2014
Affirmed
Peterson, Judge**

Rice County District Court
File No. 66-CR-12-2713

Lori Swanson, Attorney General, St. Paul, Minnesota; and

G. Paul Beaumaster, Rice County Attorney, Terence John Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael Wallace Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Reyes, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from convictions of fourth- and fifth-degree criminal sexual conduct, appellant argues that because there are significant inconsistencies between the victim's trial testimony and her prior statements and there is no corroborating evidence, the evidence was insufficient to prove that he had sexual contact with the victim. We affirm.

## FACTS

In September 2012, the victim was 14 years old. After school on three days each week, she went to the home of her mother's friend, J.S., and stayed there until her mother was done with work. J.S. lived with appellant Gregory Levon Spraggins, Jr.

On September 21, 2012, the victim went to J.S.'s house after school. The victim was in the living room watching television when appellant came into the living room, told the victim that he wanted to teach her about sex, and then reached down and grabbed her left breast over her clothes. The only people in the house were the victim, appellant, and appellant's one-year-old son. The victim pushed appellant away, picked up the son, and went outside to wait for her mother.

The victim told her friend B.G. about the sexual assault. On September 26, 2012, the victim sent her mother two text messages about the assault. The first text states, "Mom greg says hes trying to teach me about sex but he touches me." The second text states:

> I was downstairs and he comes over and says im at that age when I need to no about sex and then he thouches me and asks me how it felt but I just ran outside with bubu [appellant's son] and stayed there for a while and later he went out to his car and left when he came back he had the kids then he didn't talk to me again that day.

After receiving the text messages, the victim's mother brought her to Hope Center, and an advocate from Hope Center set up a meeting with Faribault Police Detective Brandon L. Gliem. Gliem interviewed the victim with her mother and the advocate present. Gliem described the victim as shy, fearful, avoiding eye contact, and very uncomfortable. The victim told Gliem that she was seated on the floor in front of the television while babysitting appellant's son when appellant came into the room, sat next to her on the floor, and started to talk to her about sex and sex education. The victim stated that appellant said that she was at an age when she should know about sex, groped her breast one time, and asked her how it felt. The victim was scared, so she took the son and went outside. Either the victim or her mother told Gliem that the victim had been released from school early that day.

Appellant was charged with one count each of fourth-degree criminal sexual conduct in violation of Minn. Stat. § 609.345, subd. 1(b) (2012); and fifth-degree criminal sexual conduct in violation of Minn. Stat. § 609.3451, subd. 1(1) (2012). To convict appellant of the charged offenses, the state was required to prove that he engaged in sexual contact with the victim without her consent and with either sexual or aggressive intent. Minn. Stat. §§ 609.345, subd. 1(b), .3451, subd. 1(1), .341, subd. 11(a) (2012). Appellant waived his right to a jury trial, and the case was tried to the court.

There were discrepancies between the victim's statement to Gliem and her trial testimony. The victim testified at trial that she got out of school at 3:05 p.m. on September 21, 2012. She testified that she was sitting on the couch and that appellant was standing in front of her when he touched her breast. The victim testified that appellant's son was by the couch when she grabbed him to go outside but admitted on cross-examination that she had told Gliem that she went upstairs to get the son. Gliem testified that the victim said that the son crawled up the stairs by himself. The victim testified that she told her mother and B.G. about the sexual assault, but she told Gliem that she also told another friend about it.

There were also discrepancies between the victim's and B.G.'s testimony. The victim testified that she "just told [B.G.] that my mom's best friend's boyfriend touched me and that I wasn't feeling like myself," and that she did not provide B.G. with specific details. B.G. testified that the victim said that a person named Gregory "touched her while he was trying to teach her about sex" and that Gregory said that he cared about and loved her. B.G.'s testimony was consistent with the statement she gave to Gliem. Also, the victim testified that B.G. was no longer her best friend because they had a falling out. B.G. testified that nothing had happened between them and that the only reason they were no longer friends was because B.G. was no longer attending Faribault High School.

The victim testified that she was nervous being in court and that, when she is nervous, "a lot of things tend to slip my mind." The victim testified that some of the details about the sexual assault were hard for her to remember and that she had tried to forget the details.

4

The district court found appellant guilty and sentenced him on the fourth-degree offense to a stayed term of 18 months in prison. This appeal followed.

**D E C I S I O N**

When reviewing the sufficiency of the evidence, we apply the same standard of review to bench and jury trials. *In re Welfare of M.E.M.*, 674 N.W.2d 208, 215 (Minn. App. 2004). When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," was sufficient to allow the fact-finder to reach the verdict that it reached. *State v. Caine,* 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted). We must assume that "the [fact-finder] believed the State's witnesses and disbelieved the defense witnesses." *State v. Tscheu,* 758 N.W.2d 849, 858 (Minn. 2008). We will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the crime charged. *Bernhardt v. State,* 684 N.W.2d 465, 476-77 (Minn. 2004).

Assessing the credibility of witnesses and weighing their testimony is within the exclusive province of the fact-finder. *State v. Folkers,* 581 N.W.2d 321, 327 (Minn. 1998). Minor inconsistencies in testimony and conflicts in evidence do not require reversal, but rather are factors for the jury to consider when making credibility determinations. *State v. Johnson,* 679 N.W.2d 378, 387 (Minn. App. 2004), *review denied* (Minn. Aug. 17, 2004). A sexual-abuse victim's testimony need not be corroborated to sustain a conviction, Minn. Stat. § 609.347, subd. 1 (2012); and "a

5

conviction can rest on the uncorroborated testimony of a single credible witness. *State v. Foreman,* 680 N.W.2d 536, 539 (Minn. 2004).

The inconsistencies between the victim's pretrial statements and her trial testimony are minor and go to collateral matters, such as whether the victim was released from school about one hour early on the day of the assault, whether the victim was sitting on the couch or the floor in the living room, whether appellant's son was still in the living room when the victim picked him up or had crawled up the stairs, whether she told two or three people about the assault, and the amount of detail she provided to B.G. about the assault.

Appellant argues that the victim's specific testimony about the assault at trial was inconsistent with her reluctance to discuss details with Gliem. But the substance of the victim's statement to Gliem about the assault was consistent with her trial testimony that appellant was talking to her about sex education and grabbed her breast. The victim's reluctance to talk to Gliem is consistent with her mother's description of the victim's demeanor as upset, depressed, and more quiet than normal following the assault, and the fact that the victim's demeanor when she was interviewed by Gliem less than one week after the assault was different from her demeanor at trial does not demonstrate that the victim was not credible.

Appellant argues that the victim's testimony on direct examination that appellant grabbed her breast was inconsistent with her testimony on cross-examination that appellant only touched her breast and that she pushed his hand away before he could squeeze it. Defense counsel used the word "touch" when cross-examining the victim,

6

and the victim agreed that appellant had "touched" her breast. Defense counsel then asked if appellant had squeezed her breast, and the victim responded that he tried but she pushed his hand away before he could do so. Describing the contact as grabbing and describing it as touching without squeezing are consistent descriptions of appellant's conduct. "Grab" means "[t]o take or grasp suddenly." *The American Heritage Dictionary of the English Language* 784 (3d ed. 1992). "Grabbed" does not imply that the sudden grasp was followed by exerting pressure, as appellant seems to suggest.

Appellant submitted a pro se supplemental brief that also challenges the victim's credibility. In addition to the issues already addressed, appellant cites the inconsistency between the victim's trial testimony that appellant did not come out of the house after the assault and her text message to her mother that said that appellant went out to his car and left to pick up the other children and then returned with them. This is a minor inconsistency about a collateral matter. Appellant also argues that the victim's testimony that she and B.G. had a falling out is inconsistent with B.G.'s testimony that their friendship ended because B.G. no longer attended Faribault High School. When asked about the falling out, the victim explained that B.G. had made new friends and that she and B.G. drifted apart. The differences between B.G.'s and the victim's testimony simply reflect differences in perception as to why the friendship ended.

Appellant also challenges the victim's credibility based on J.S.'s testimony about the victim's character for dishonesty and the lack of corroborating evidence. The district court specifically found J.S.'s testimony incredible. And there was corroborating evidence. The victim's testimony about how the sexual assault occurred was consistent

7

with her out-of-court statements. *See State v. Christopherson,* 500 N.W.2d 794, 798 (Minn. App. 1993) (stating that consistent statements about an assault to multiple individuals self-corroborated a child victim's testimony). The change in the victim's demeanor following the assault is also corroborating evidence. *See State v. Mosby,* 450 N.W.2d 629, 635 (Minn. App. 1990) (stating that sexual-assault victim's demeanor after assault corroborated her testimony), *review denied* (Minn. Mar. 16, 1990).

Assessing the victim's credibility and weighing her testimony was within the exclusive province of the district court as fact-finder, the district court specifically found her testimony credible, and appellant has not identified any basis for us to conclude that the evidence was not sufficient to allow the district court to reach the verdict that it reached. *See Nelson v. Nelson*, 282 Minn. 487, 492, 166 N.W.2d 70, 74 (1969) (stating that "[i]t cannot be expected that statements given by a witness at different times and under different circumstances must conform in every detail" and that "[i]t is for the jury to pass upon the credibility of the witness"); *Mosby*, 450 N.W.2d at 634 (stating that "inconsistencies are a sign of human fallibility and do not prove testimony is false, especially when the testimony is about a traumatic event").

**Affirmed**.