*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2188**

State of Minnesota,
Respondent,

vs.

Reynaldo Benitez,
Appellant.

**Filed December 28, 2015
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-13-34703

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and

Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

        Appellant challenges his conviction of first-degree criminal sexual conduct, arguing

that he is entitled to a new trial due to the admission of testimony from unsworn witnesses,

erroneous evidentiary rulings, and prosecutorial misconduct. Appellant also challenges his upward durational sentencing departure. We affirm.

## FACTS

Appellant Reynaldo Benitez resided with M.M., his girlfriend; B.W.; and B.W.'s three minor children, Z.W., N.W., and F.W. Benitez and M.M. viewed all of the children as their grandchildren.[1] In July 2013, after B.W. lost custody of the children, the children went to live with R.W., their great aunt. In October 2013, N.W., then six years old, disclosed to R.W. that, when N.W. lived with Benitez, he "put [his penis] in her" and "put [his penis] in [her] mouth." R.W. alerted child-protection authorities and law enforcement, who arranged for N.W. to participate in a forensic interview during which N.W. stated that Benitez "put his private part in [her] mouth," that "his private part [went] in [her] private part," and that these acts occurred when she was five years old.

Respondent State of Minnesota charged Benitez with first-degree criminal sexual conduct, notified him of the state's intention to seek an upward departure from the presumptive sentence under the Minnesota Sentencing Guidelines, and moved to admit relationship and *Spreigl* evidence of Benitez's alleged sexual conduct with Z.W., who was born in 2004. The district court ruled that the evidence was admissible as relationship and *Spreigl* evidence to demonstrate a common scheme or plan and to refute an allegation of fabrication or mistake.

---

[1] M.M. is the paternal grandmother of at least one of the children.

At a jury trial in August 2014, N.W. testified that Benitez "put[] his private part in [her] private part" and put his "private part . . . inside [her] mouth" when she was five years old. N.W. testified that these acts occurred more than one time and on multiple days. Z.W. testified that, when he was between three and seven years old, Benitez "ripped off" Z.W.'s clothing and touched Z.W's "privates" and "butt" with his hand. Z.W. also explained that a picture that he had drawn depicted Benitez ripping off Z.W.'s clothes and humping Z.W. naked. Benitez testified and denied engaging in sexual conduct with N.W. and Z.W. The jury found Benitez guilty of first-degree criminal sexual conduct.

At a separate proceeding, the district court instructed the jury to determine whether Benitez penetrated N.W.'s genital opening with his penis, whether Benitez penetrated N.W.'s mouth with his penis, whether Benitez was acting in the place of a parent at the time of the act, and whether Benitez had "responsibility for the health, welfare or supervision of [N.W.], no matter how brief, at the time of the act." The jury responded to each of these questions in the affirmative. At sentencing, the district court referenced the jury's findings, noting that Benitez committed multiple forms of penetration against N.W. and that Benitez was supposed to be caring for N.W. and instead sexually abused her. The court imposed an upward-departure sentence of 344 months' imprisonment.

This appeal follows.

## DECISION

### I.

Before N.W., then age seven, testified, the district court conducted the following inquiry:

3

> THE COURT: . . . Do you know what it means to tell the truth, [N.W.]?
>
> N.W.: Yeah.
>
> THE COURT: All right. So if I said that this was black, would that be the truth or not the truth?
>
> N.W.: Not the truth.
>
> THE COURT: Okay. Have you ever told a lie before?
>
> N.W.: No.
>
> THE COURT: Okay. If I ask you to tell the truth, will you do that?
>
> N.W.: Yes.
>
> THE COURT: Okay. And with your promise to tell the truth, that means not to hide anything, okay?
>
> N.W.: Okay.
>
> THE COURT: All right. You have to tell everything you remember when a question is asked, okay?
>
> N.W.: Okay.

Before Z.W., then age ten, testified, the district court conducted the following inquiry:

> THE COURT: . . . [Z.W.], do you know the difference between a truth and a lie?
>
> Z.W.: Yep.
>
> THE COURT: Okay. If I said that this was black, would that be the truth or would that be a lie?
>
> Z.W.: A lie.
>
> THE COURT: Okay. And in this case now, questions are going to be asked of you and I want you to tell the truth. Will you do that?
>
> Z.W.: Yeah.
>
> THE COURT: What happens if you tell a lie at school or at home?
>
> Z.W.: I get in trouble.
>
> THE COURT: Okay. And have you ever told a lie before?
>
> Z.W.: Yeah.
>
> THE COURT: Okay. And did you get in trouble?
>
> Z.W.: Yeah.
>
> THE COURT: Okay. With your promise to tell the truth, that means not to hide anything, do you understand that?
>
> Z.W.: Yeah.

4

> THE COURT: Okay. You have to tell everything you remember when you are asked a question, okay?
>
> Z.W.: Yeah.

With no objection by Benitez, the district court substituted these inquiries of the children for its administration of an oath. The supreme court has held that "failure to swear a witness in an ordinary civil trial, or even in a criminal trial, may be waived by failure to object." *State v. Lopez-Rios*, 669 N.W.2d 603, 615 (Minn. 2003) (quotation omitted) (concluding that defendant waived argument that district court erred by allowing witness to testify without being sworn by failing to object at trial).[2] "Plain error affecting a substantial right can be considered . . . on appeal even if it was not brought to the trial court's attention." Minn. R. Crim. P. 31.02. Plain-error analysis "requires the defendant to establish (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights." *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015).

"Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." Minn. R. Evid. 603. "Rule 603 is designed to afford the flexibility required in dealing with children. Affirmation is simply a solemn undertaking to tell the truth; *no special verbal formula is required*." *State v. Mosby*, 450 N.W.2d 629, 633 (Minn. App. 1990) (quotation omitted), *review denied* (Minn. Mar. 16, 1990).

---

[2] The supreme court recently clarified that use of the term "forfeiture," rather than "waiver," is proper when discussing a defendant's failure to object to an alleged error. *See State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015), *cert. denied*, 136 S. Ct. 92 (Oct. 5, 2015).

N.W. and Z.W. confirmed that they understood the difference between the truth and a lie. They agreed to tell the truth, not to hide anything, and to tell everything that they remembered when being questioned. We conclude that the children's statements satisfied rule 603 as sufficient affirmations to testify truthfully and that the district court did not err. *Cf. State v. Morrison*, 437 N.W.2d 422, 428 (Minn. App. 1989) (concluding that "[t]he child [witness] was administered the equivalent of an oath" when she "indicated she knew what a lie was, what the truth was, and nodded her head when asked to promise to tell the truth"), *review denied* (Minn. Apr. 26, 1989). Because the district court did not err, we need not address the remaining steps in plain-error analysis.

## II.

Benitez argues that the district court abused its discretion by admitting relationship and *Spreigl* evidence of Benitez's alleged sexual conduct with Z.W.

*Relationship evidence*

We review for an abuse of discretion a district court's decision to admit relationship evidence under Minn. Stat. § 634.20 (2014). *See State v. Matthews*, 779 N.W.2d 543, 553 (Minn. 2010).

> Evidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20. Domestic conduct includes domestic abuse, *id.*, which includes criminal sexual conduct, Minn. Stat. § 518B.01, subd. 2(a)(3) (2014). Evidence of domestic

6

abuse "may be offered to illuminate the history" of a family or household relationship. *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004).

The probative value of Z.W.'s testimony was not substantially outweighed by concerns of unfair prejudice, confusion of the issue, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. The children's descriptions of sexual abuse were markedly similar, and Z.W.'s testimony was relevant to counter Benitez's contention that he never engaged in sexual conduct with N.W. The district court did not abuse its discretion by admitting evidence of Benitez's alleged sexual assault of Z.W. as relationship evidence.

*Spreigl evidence*

Evidence of other crimes, wrongs, or acts is commonly known as *Spreigl* evidence. *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015) (citing *State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965)). A district court's decision to admit *Spreigl* evidence is reviewed for an abuse of discretion. *Id.*

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b); *see also State v. Fardan*, 773 N.W.2d 303, 315 (Minn. 2009) (stating that use of *Spreigl* evidence is improper to "suggest[] that the defendant has a propensity to commit the crime or that the defendant is a proper candidate for punishment for his or her past acts" (quotation omitted)). But *Spreigl* evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence

of mistake or accident." Minn. R. Evid. 404(b). *Spreigl* evidence may be admitted in a criminal prosecution only if

> (1) the prosecutor gives notice of its intent to admit the evidence consistent with the Rules of Criminal Procedure; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

*Id.* Benitez disputes that the evidence of alleged sexual conduct with Z.W. was relevant to the state's case and argues that the probative value of the evidence was outweighed by its potential for unfair prejudice.

The district court determined that the evidence was relevant to show a common scheme or plan and to refute an allegation of fabrication or mistake by N.W. The supreme court has held that *Spreigl* evidence may be admitted under the common-scheme-or-plan exception "to establish that the conduct on which the charged offense was based actually occurred or to refute the defendant's contention that the victim's testimony was a fabrication or a mistake in perception." *State v. Ness*, 707 N.W.2d 676, 687–88 (Minn. 2006). Other acts "must have a marked similarity in modus operandi to the charged offense." *Id.* at 688. Other acts "need not be identical in every way to the charged crime, but must instead be sufficiently or substantially similar to the charged offense—determined by time, place and modus operandi." *Id.* (emphasis omitted) (quotation omitted).

N.W. and Z.W. similarly described Benitez's sexual abuse of them. N.W. testified that Benitez "grabbed [her]," "h[e]ld down [her] underwear," "ma[d]e sure [she] stay[ed]

8

on the bed," "put[] his private part in [her] private part," and put his "private part . . . inside [her] mouth." Z.W. testified that Benitez "ripped off" Z.W.'s clothing and touched Z.W's "privates" and "butt." Z.W. had drawn a picture that he explained depicted Benitez pushing Z.W. down and Benitez and Z.W. "hump[ing] . . . naked." Both children testified that Benitez kissed them on the mouth and that the abuse occurred in the home and on multiple occasions. Z.W. testified that his abuse occurred when he was between the ages of three and seven, and N.W. testified that her abuse occurred when she was five years old. The alleged acts of sexual abuse by Benitez were "sufficiently or substantially similar" in terms of "time, place and modus operandi." *See id.* (emphasis omitted) (quotation omitted). And Z.W.'s testimony assisted in countering Benitez's contention that he never engaged in sexual conduct with the children. *Cf. State v. Wermerskirchen*, 497 N.W.2d 235, 242 (Minn. 1993) (stating that *Spreigl* evidence of defendant's prior sexual conduct with female child relatives "was highly relevant to the specific issue of whether the conduct on which the charge was based actually occurred or was . . . a fabrication or a mistake in perception by the victim" where defendant denied that sexual assault occurred). We conclude that evidence of Benitez's alleged sexual assault of Z.W. was admissible under the common-scheme-or-plan exception and relevant to the state's case.

"When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). The supreme court has stated that evidence admitted under the common-scheme-or-plan

9

exception poses a "particular risk" of causing unfair prejudice. *See Ness*, 707 N.W.2d at 687. But the supreme court also has "frequently said" that "the closer the relationship between the other acts and the charged offense, in terms of time, place, or modus operandi, the greater the relevance and probative value of the other-acts evidence and the lesser the likelihood that the evidence will be used for an improper purpose." *Id.* at 688.

The instances of sexual abuse described by N.W. and Z.W. bear a close relationship in terms of time, place, and modus operandi. And Z.W.'s testimony was "highly relevant" to the state's case to show that the charged offense occurred and that N.W.'s allegations were not a fabrication or mistake. *See Wermerskirchen*, 497 N.W.2d at 242. We conclude that the probative value of Z.W.'s testimony was not outweighed by its potential for unfair prejudice to Benitez. The district court did not abuse its discretion by admitting evidence of Benitez's alleged sexual assault of Z.W. as *Spreigl* evidence.

**III.**

During the state's closing argument, the prosecutor read and displayed a slide of a quotation that she attributed to Nelson Mandela, stating: "[S]afety and security don't just happen. They are the result of collective consensus and public investment because we owe our children, the most vulnerable citizens in our society, a life that is free of violence and fear." The prosecutor then stated that "[i]t is this case and cases like this that is the reason why we have laws that protect our children." Benitez objected to these statements. The district court noted that the prosecutor did not read the quotation "in a grandiose manner" or "overemphasize it" and determined that the prosecutor's closing argument was "within the bounds of legitimate advocacy." Benitez argues that the prosecutor's statements

10

constituted prejudicial misconduct. We therefore consider whether there was misconduct and whether any misconduct was harmless. *See State v. Wren*, 738 N.W.2d 378, 390 (Minn. 2007) ("We first address whether there was misconduct, and if so, whether it entitles Wren to a new trial.").

"The determination of the propriety of a prosecutor's closing argument is generally within the sound discretion of the trial court." *Nunn v. State*, 753 N.W.2d 657, 661 (Minn. 2008) (quotations omitted). "A prosecutor engages in prosecutorial misconduct when he violates clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008) (quotation omitted). "A prosecutor is not permitted to appeal to the passions of the jury during closing argument" and should "avoid arguments that divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused." *Nunn*, 753 N.W.2d at 661–62 (quotations omitted); *see also State v. Hoppe*, 641 N.W.2d 315, 320 (Minn. App. 2002) ("It is improper for a prosecutor to urge the jury to protect society with its verdict."), *review denied* (Minn. May 14, 2002).

Here, the prosecutor appealed to the passions of the jury and injected broad societal issues by stating that "we owe our children, the most vulnerable citizens in our society, a life that is free of violence and fear" and that "[i]t is this case and cases like this that is the reason why we have laws that protect our children." These statements urged the jury to return a guilty verdict to protect children in general rather to protect N.W., the victim in this case. *Compare Nunn*, 753 N.W.2d at 661–62 (concluding that prosecutor did not commit misconduct during closing argument by stating that defendant's victims deserved

protection), *with State v. Friend*, 385 N.W.2d 313, 322 (Minn. App. 1986) ("The prosecution's reference in his closing argument to the jurors as protectors of young girls is improper."), *review denied* (Minn. May 22, 1986). We conclude that the prosecutor committed misconduct during her closing argument.

Appellate courts have utilized a two-tiered harmless-error test when reviewing objected-to prosecutorial misconduct. *See State v. Carridine*, 812 N.W.2d 130, 150 (Minn. 2012) (stating that application of test "varies based on the severity of the misconduct"). For "unusually serious misconduct," the appellate court "ask[s] whether the . . . misconduct was harmless beyond a reasonable doubt," while for "less serious . . . misconduct," the appellate court "ask[s] whether the misconduct likely played a substantial part in influencing the jury to convict." *State v. Nissalke*, 801 N.W.2d 82, 105 (Minn. 2011) (quotations omitted). The supreme court has questioned, but has not decided, whether appellate courts should continue to use this two-tiered approach. *See, e.g.*, *State v. Little*, 851 N.W.2d 878, 889 n.2 (Minn. 2014) ("[I]n several cases, we have questioned the continued viability of [the] two-tiered approach to harmless-error review of prosecutorial misconduct."); *Carridine*, 812 N.W.2d at 150 ("Whether the [two-tiered] test should continue to apply to objected-to prosecutorial misconduct has been the subject of discussion in some of our recent decisions."). Recently, the supreme court has simply applied the review for more serious misconduct. *See, e.g.*, *Carridine*, 812 N.W.2d at 146 ("Because we conclude that the one instance of objected-to prosecutorial misconduct here is harmless even under the standard for more serious misconduct, we do not reach the issue

of the continued applicability of the [two-tiered] test to objected-to prosecutorial misconduct.").

The prosecutor's misconduct in this case was harmless error even under the standard applied to more serious prosecutorial misconduct. Misconduct is harmless beyond a reasonable doubt "only if the verdict rendered was surely unattributable" to the misconduct. *Nissalke*, 801 N.W.2d at 105–06; *see also State v. Martin*, 773 N.W.2d 89, 106 (Minn. 2009) (considering strength of evidence against defendant, pervasiveness of misconduct, and mitigation of misconduct to determine whether possible prosecutorial misconduct was harmless beyond a reasonable doubt). N.W. consistently reported before trial and testified at trial the Benitez put his penis in her private part and in her mouth. The prosecutor's improper statements were brief in the context of her entire closing argument and especially in the context of the entire six-day jury trial. And defense counsel attempted to rebut the improper statements during her closing argument by stating that it is important for law enforcement and society to investigate a child's claims of sexual abuse, but that it was the jury's role to decide the case based on the evidence and to determine whether the state met its burden of proof beyond a reasonable doubt. Under these circumstances, the jury's verdict was surely unattributable to the prosecutor's improper statements, and Benitez is not entitled to a new trial due to the prosecutorial misconduct.

**IV.**

Benitez argues that the district court abused its discretion by imposing an upward-departure sentence based on improper reasons. For a defendant with Benitez's criminal-history score of zero, the presumptive guidelines sentence for first-degree criminal sexual

13

conduct is 144 months' imprisonment, with a discretionary range of 144 to 172 months. *See* Minn. Sent. Guidelines 4.B (2012). The district court granted an upward durational departure and imposed a sentence of 344 months.

A district court's decision to depart from the sentencing guidelines is reviewed for an abuse of discretion. *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). "If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed. But if the district court's reasons for departure are improper or inadequate, the departure will be reversed." *Id.* (quotations omitted). "The court must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances to support a sentence outside the appropriate range on the applicable Grid." Minn. Sent. Guidelines 2.D.1 (2012). "Substantial and compelling circumstances are those demonstrating that the defendant's conduct in the offense of conviction was significantly more or less serious than that typically involved in the commission of the crime in question." *Hicks*, 864 N.W.2d at 157 (quotations omitted).

*Multiple forms of penetration*

The jury found that Benitez penetrated N.W.'s genital opening and mouth with his penis, and the district court referenced Benitez's "multiple forms of penetration against [N.W.]" as a basis for departure. Benitez contends that this finding was an improper basis for departure because the guilty verdict was based on the jury's determination that at least one form of penetration occurred.

"[T]he district court may not base an upward departure on facts necessary to prove elements of the offense being sentenced." *State v. Edwards*, 774 N.W.2d 596, 602 (Minn.

14

2009). But the supreme court has approved of the use of a finding of multiple forms of penetration as an aggravating factor to support a departure sentence for a sex crime. *See, e.g.*, *Rairdon v. State*, 557 N.W.2d 318, 327 (Minn. 1996) (stating that "the trial court was justified in noting the multiple forms of sexual abuse as a basis for departure"); *State v. Dietz*, 344 N.W.2d 386, 389 (Minn. 1984) ("We have indicated in a number of cases that subjecting the victim to multiple types of penetration can be considered in determining whether there are aggravating circumstances present justifying a durational departure . . . ."). And we have stated that "[t]he fact that a defendant has subjected a victim to multiple forms of penetration is a valid aggravating factor in first-degree criminal sexual conduct cases" because "multiple forms of penetration is not 'typical' of the offense charged." *State v. Adell*, 755 N.W.2d 767, 774–75 (Minn. App. 2008), *review denied* (Minn. Nov. 25, 2008). Benitez's argument that the finding of multiple forms of penetration was an improper basis for departure is without merit.

*Responsibility to care for N.W.*

The jury found that Benitez was "acting in the place of a parent at the time of the act" and had "responsibility for the health, welfare or supervision of [N.W.], no matter how brief, at the time of the act." The district court referenced the fact that Benitez was "supposed to be caring for [N.W.] and instead [he] sexually abused her" as a basis for departure. "Abuse of positions of trust and authority are aggravating factors justifying a durational departure." *State v. Carpenter*, 459 N.W.2d 121, 128 (Minn. 1990).

"A departure cannot be based on uncharged criminal conduct." *State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008). Benitez was convicted of first-degree criminal sexual

15

conduct under Minn. Stat. § 609.342, subd. 1(a) (2012), a version of first-degree criminal sexual conduct where "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Benitez argues that his responsibility to care for N.W. was an improper basis for departure because he could have been charged with a version of first-degree criminal sexual conduct involving a significant relationship with the victim.[3] *See* Minn. Stat. § 609.342, subd. 1(g), (h) (2012) (defining versions of first-degree criminal sexual conduct where "the actor has a significant relationship to the complainant" and "the complainant was under 16 years of age at the time of the sexual penetration"); *see also* Minn. Stat. § 609.341, subd. 15 (2012) (defining "[s]ignificant relationship" to include "the complainant's parent, stepparent, or guardian" and "an adult who jointly resides intermittently or regularly in the same dwelling as the complainant and who is not the complainant's spouse" (quotation marks omitted)).

The supreme court recently addressed the rule articulated in *Jackson* that "a departure cannot be based on uncharged criminal conduct." *Hicks*, 864 N.W.2d at 161–62 (quotation omitted). The supreme court clarified that, in *Jackson*, "[it] w[as] . . . concerned with the possibility that the sentencing guidelines could be manipulated by bringing lesser charges than the facts permitted in order to obtain a longer sentence by withholding some facts related to greater charges to use as an aggravating factor at sentencing." *Id.*; *see*

---

[3] Benitez also seems to suggest that he could have been charged with a version of first-degree criminal sexual conduct involving a position of authority over the victim under Minn. Stat. § 609.342, subd. 1(b) (2012). Section 609.342, subdivision 1(b), requires that "the complainant [be] at least 13 years of age but less than 16 years of age." N.W. was under 13 years of age when the offense occurred, so Benitez could not have been charged under section 609.342, subdivision 1(b).

*Jackson*, 749 N.W.2d at 358 (observing that "the guidelines do not contemplate enhanced sentences based on uncharged criminal conduct that would be far greater than what would otherwise be permitted based on charged criminal conduct"). Responding to Hicks's argument that "concealment of a murder victim's body cannot be an aggravating factor because it constitutes the uncharged offense of interfering with a dead body," the supreme court distinguished *Jackson* and stated that Hicks had not been undercharged and that there was no concern of sentencing manipulation by the state. *Hicks*, 864 N.W.2d at 161–62. The court concluded that "the facts of concealing a homicide victim's body are available for departure in appropriate cases" and affirmed the district court's upward durational departure. *Id.* at 162–63.

Similarly, this case raises no concern of undercharging or sentencing manipulation. The state charged Benitez with the most serious degree of criminal sexual conduct. Benitez's responsibility to care for N.W. was a proper basis for departure. Because the district court's reasons for departure "are legally permissible and factually supported in the record," the district court did not abuse its discretion by imposing the upward departure sentence. *See id.* at 156 (quotation omitted).

## V.

Benitez filed a pro se supplemental brief in which he maintains his innocence. When reviewing the sufficiency of the evidence for a conviction, an appellate court "view[s] the evidence in a light most favorable to the verdict to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt." *State v. Salyers*, 858

17

N.W.2d 156, 160 (Minn. 2015) (quotations omitted). Benitez was convicted under Minn. Stat. § 609.342, subd. 1(a), which defines first-degree criminal sexual conduct as "engag[ing] in sexual penetration with another person, or in sexual contact with a person under 13 years of age," if "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." N.W. testified that, when she was five years old, Benitez "put[] his private part in [her] private part" and put his "private part . . . inside [her] mouth." We leave determinations of witness credibility to the jury and assume that the jury believed N.W. and disbelieved any contrary evidence. *See Gulbertson v. State*, 843 N.W.2d 240, 245–46 (Minn. 2014). The evidence presented at trial was sufficient for the jury to find Benitez guilty of first-degree criminal sexual conduct.

Benitez also appears to argue in his pro se brief that M.M. should have been called to testify and that some "letters regarding [his] conduct" should have been admitted into evidence. What evidence to present to a jury and what witnesses to call are decisions of trial strategy that we decline to review. *See Carridine v. State*, 867 N.W.2d 488, 494 (Minn. 2015) (discussing unreviewable nature of trial strategy in context of claim of ineffective assistance of trial counsel).

**Affirmed.**